UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND, OHIO

| | | |
|---|---|---|
| Martine Divito | : | CASE NO: |
| 36210 Maplegrove Road | : | |
| Willoughby Hills, OH 44094 | : | JUDGE |
| | : | |
| Plaintiff | : | |
| | : | |
| -vs- | : | |
| | : | |
| Mayor Fletcher Berger | : | |
| 5661 Perkins Rd | : | |
| Bedford Heights, OH 44146 | : | |
| | : | |
| Defendant | : | |
| | : | |
| -and- | : | |
| | : | |
| City of Bedford Heights | : | |
| 5661 Perkins Road | : | |
| Bedford Heights, OH 44146 | : | |

**COMPLAINT WITH JURY DEMAND**

Comes the Plaintiff, Martine M. Divito, by and through her attorney, Jay F. Crook, alleges and states as follows:

PRELIMINARY STATEMENT

1. The Plaintiff, Martine M. Divito brings this action against Mayor Fletcher Berger and the City of Bedford Heights [(collectively the "Defendants")] for violations of the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA").

2. Defendant(s) hired Plaintiff on September 14, 2004 as the Director of Economic and Community Development. During her tenure at the City of Bedford Heights Plaintiff has

1

performed well]. Despite Plaintiff 's many achievements, Defendant(s) discriminated against plaintiff and suspended her without pay in retaliation for her request(s) for a reasonable accommodation for her disability. As a result, Plaintiff has suffered significant emotional and monetary damages.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the ADA and 42 USC

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that all Defendants resides in this district and all defendants reside in Northeast Ohio, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district/28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district/28 U.S.C. § 1391(b)(3), in that Mayor Fletcher Berger and the City of Bedford Heights subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## CONDITIONS PRECEDENT

5.On April 12, 2019 , Plaintiff timely filed charges of disability discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

6.On or about July 15, 2019, the EEOC issued Plaintiff a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

## PARTIES

7. Plaintiff resides in Willoughby Hills, Ohio.

8. Plaintiff is an employee, as defined by the ADA.

9. Upon information and belief, Defendant Mayor Fletcher Berger is an individual who resides in Bedford Heights, Ohio is the Mayor of Bedford Heights, Ohio

10. Defendant City of Bedford Heights is a municipal corporation with corporate headquarters located in Bedford Heights, Ohio maintains offices and does business at 5661 Perkins Road, Bedford Heights Ohio and is the employer of both Defendant Mayor Fletcher Berger and Plaintiff.

## FACTS COMMON TO ALL COUNTS

11. Plaintiff began working for Defendant City of Bedford Heights) on September 14, 2004 as the Director of Economic and Community Development, was placed under the direction and control of Defendant Mayor Fletcher Berger on or about January 1, 2008.

12. During her tenure, Plaintiff 's work performance met or exceeded Defendants' legitimate expectations. Plaintiff 's reviews of her performance were consistently satisfactory to excellent. Plaintiff was responsible for facilitating the initiation numerous large projects / investments in the City of Bedford Heights.

13. Plaintiff , having been diagnosed with anxiety and severe claustrophobia in the year , said diagnosis being known to the City since at least 2008, is a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended. As a result of Plaintiff 's disability, major life activities, such as the ability to work in confined spaces with less than two (2) or more limits of ingress / egress, to feel secure in every day situations were and remain

3

substantially limited.

14. The staff at the City of Bedford Heights have had both actual and constructive notice of Plaintiff's mental health difficulties since 2008.

15. In 2008, Gina Capone, another Bedford Heights employee, found Plaintiff crying in the kitchen in the basement of City Hall. Plaintiff was suffering from stressors created by the failing health and eventual death of Plaintiff's father as well as the after affects of a divorce and multiple assaults.

16. According to Ms. Capone, when Plaintiff spoke to her, Plaintiff's words / actions raised concerns about possible suicide. As a result, Plaintiff was placed on paid administrative leave for a week by the city.

17. After a week of counseling, Plaintiff was able to return to work. The City has been aware of Plaintiff's mental health issues / medical needs since that time, including but not limited to the need for a secure space with two forms of egress from the building to combat Plaintiff's anxiety and fear of being trapped. The placement on administrative leave was one of the exhibits presented by the City in advocating for Plaintiff's suspension.

18. In early 2019, Plaintiff became aware of the plans to reorganize the office assignments for City personnel. During the first or second week of January 2019, Mayor Berger came down in the afternoon to discuss the office restructuring. At this time of his visit, PLAINTIFF was not aware that my office was one of the ones scheduled to be moved. PLAINTIFF am currently diagnosed with both anxiety and panic attacks. These symptoms are the after effect of the assaults that PLAINTIFF suffered in the past.

19. In order to avoid triggering her symptoms, PLAINTIFF needs to be in a room with two (2) ways of egress from the building and natural lighting. In both Plaintiff's current office and her

4

previous office, Plaintiff was able to exit my office through a door or a window leading to the outside. Plaintiff's current office also has access to another office through a window.

20. In the meeting with Mayor Berger Plaintiff was informed that she would be moved to a different office in the basement.

21. Plaintiff attempted to explain to Mayor Berger the issues she was facing, and why the proposed office did not have a sufficient number of exits / escape points for Plaintiff to be able to effectively work given her diagnosis. During the conversation, Plaintiff said she could get a letter from her Doctor further explaining the issue. The Mayor suggested that she should get the letter.

22. After the meeting Plaintiff contacted her health care provider, Doctor Kathryn Muzina who provided Plaintiff a copy of the letter she wrote to the Mayor, dated January 14, 2018. A copy of the letter is attached as Exhibit A.

23. In order to make sure she had a copy of the letter, Plaintiff asked they Fax me a copy, which was then filed in a drawer in her office. It was Plaintiff's understanding that a copy had been sent to the Mayor as well.

24. During the afternoon of February 5th Mayor Berger came down to Plaintiff's office to discuss what Plaintiff thought were the finalized plans for the new office arrangement. The new plan had her office moving to the top floor, into an office with no windows to the outside and only one door. Plaintiff stated that her doctor sent the letter to Mayor Berger's office and copied by fax a letter stating that Plaintiff has anxiety and panic attacks.

25. At the thought of being moved to an office where she could potentially be trapped, Plaintiff became upset, began to panic and repeatedly stated she cannot do that and began to suffer a panic attack

5

26. After the meeting, Plaintiff was made aware that I had she had used profanity and raised her voice while objecting to the new office plan. Upon being informed, Plaintiff immediately went to the Mayor and apologized.

27. Plaintiff, being unable to find her copy of the letter from her physician, contacted the Cleveland Clinic to get another copy of the letter faxed to City Hall, and upon receipt ran it up to Mayor Berger's office.

28. The following day (Wednesday 2/6) Plaintiff received an unmarked Bedford Heights envelope which contained Mayor Berger's letter, titled Professional Expectations.

29. On Friday February 8th, Nick Baucco, the City Service Director approached Plaintiff's existing office to talk about the plans to move her office upstairs.

30. Given her condition, Plaintiff was anxious, but was hopeful that given the letter that her physician provided, that her need for an accommodation would be met. Mr. Baucco brought Plaintiff upstairs to the finance area where the former assistant prosecutor desk was located. The area has a glass wall that abuts the hallway where three offices empty into. On the other side of the proposed office, Nick suggested building a wall to create an office. While there were two doors in the proposed design, they both emptied out into the same route for egress.

31. Because of the lack of two separate and independent exist, Plaintiff began to panic, realizing that if she needed to escape, the route could easily be blocked by a person simply standing in one spot where all of the exits emptied into the same choke point, an alcove.

32. Upon being informed of that this was to be the new office layout, Plaintiff began hyperventilating, became extremely emotional and upset, and asked why the Mayor did not understand the medical need for two separate exits. Mr. Baucco kept repeating he was only doing what the mayor told him to do.

6

33.  Mr. Baucco then left and immediately returned with the Mayor.  At this time, Plaintiff was still very visibly upset.

34. Upon arriving, Mayor Berger began trying to explain why he felt the new plan met my needs, while Plaintiff strongly objected. Mayor Berger became visibly upset and his tone became quite upset.

35.  After the meeting, Plaintiff later learned that she had used profanity again, and upon learning went to apologize to Nick and the Mayor.

36.  Neither the meeting in Plaintiff's office nor the meeting at the proposed new office space took place within sight or hearing of the general public.

37.  Later that same day, after 5:00 PM, Mayor Berger hand delivered a Bedford Heights envelope, addressed to Plaintiff in his handwriting.  He was very calm and told Plaintiff to relax and that the issue would be addressed.  At this point, Plaintiff believed the Mayor fully understood both my medical needs, and the role those needs played in the emotional outbursts over moving me to an office that did not meet my needs.

38.  On Monday 2/11/19  Plaintiff received another faxed letter from Dr. Muzina that specifically stated the need for two points of egress and windows to the outside. A copy of this letter is attached as Exhibit B.   This letter was personally provided to the Mayor by Plaintiff hand delivering the letter.

39.  Two weeks later, and much to the surprise of Plaintiff, on Tuesday, 2/26/2019 the Assistant Police Chief hand delivered to Plaintiff a  letter from Marlene Ridenour, one of the assistant Law Directors for the City of Bedford Heights informing Plaintiff that she was to be disciplined.

7

40. Plaintiff was shocked, as she had little to no control over her reaction to the change in office arrangement or the panic attack it brought about, had immediately apologized to all parties involved, Neither incident was viewed by and/or in front of the public, and the entire situation was related to her medical / emotional needs and diagnosis.

41. On March 22, 2019 Plaintiff attended the disciplinary hearing with counsel. Upon arriving at the hearing Plaintiff learned that the two accusers against Plaintiff, Mayor Berger and Mr. Baucco would not be in attendance at the hearing. The hearing officer was an Assistant Law Director, Marlene Ridenour.

42. That as part of the disciplinary process, Plaintiff was allowed to submit a written statement. She was not, however, allowed to question her accusers.

43. That on information and belief, the City of Bedford Heights has no written disciplinary policy.

44. That the decision as to whether or not to discipline Plaintiff was placed solely in the hands of Assistant Law Director Ridenour.

45. That on information and belief, there is no provision for independent review and / or ability to appeal the decision of Ridenour.

46. That Ridenour issued a decision in which Plaintiff was suspended from work for one week without pay.

47. That in the decision to suspend Plaintiff, Ridenour refused to acknowledge Plaintiff's medical condition, cited her 2008 administrative leave for medical reasons as an example of a history of mental health issues.

48. That on information and belief, the decision to prosecute and suspend Plaintiff was advocated for and influenced by Mayor Berger, and was in retaliation for Plaintiff's advocating for her documented medical needs to be met.

49. That on information and belief, the City of Bedford Heights has no written procedures or policies for filing a request for a written accommodation or for filing complaints for violations of the ADA

50. That Rather than engaging in the interactive process to address Plaintiff 's request for an accommodation, Defendants instead ambushed Plaintiff with a plan that did not accommodate her, then proceeded to use the resulting panic attacks as grounds to discipline her, without a right of review or appeal, suspending her for five (5) days without pay.

51. On information and belief, the prosecution and suspension was in retaliation for Plaintiff engaging in protected activity by complained that the proposed office plan did not provide a reasonable accommodation for her medical needs.

## COUNT ONE

## Failure to Provide a Reasonable Accommodation

## in Violation of the Americans with Disabilities Act,

## 42 U.S.C. §§ 12181 et seq.

52. Plaintiff repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

53. That since the year 2008, Plaintiff has been diagnosed with Anxiety and Panic attacks, making her a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111 of the ADA. Plaintiff could perform the essential functions of her position with or without a reasonable accommodation.

54. On January 19, 2019, Plaintiff notified Defendant(s) about her disability and requested a

reasonable accommodation with regards to her need for two means of egress from an office she would be assigned to.

55  That .Defendant(s) refused to engage in the interactive process and denied Plaintiff 's request, instead making a room assignment clearly in violation to the accommodation that she had requested, despite being on notice of her condition and on information and belief, possessing a letter from her physician explaining the need for the accommodation.

56.  Defendant(s) instead used the results of Plaintiff's disability as a pretext for the initiation of disciplinary proceedings against her.

57 .Plaintiff suffered damages as a result of Defendant('s/s') unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

58.  .Defendant(s) intentionally violated Plaintiff 's rights under the ADA with malice or reckless indifference, and, as a result, [is/are] liable for punitive damages.

## COUNT TWO

## Retaliation in Violation of the Americans with Disabilities Act

## 42 U.S.C. §§ 12181 et seq.

59.  Plaintiff repeats and realleges paragraphs 1 through 58 hereof, as if fully set forth herein.

60  January 19, 2019 and on February 11, 2019 Plaintiff engaged in protected activity by addressing the issue to Mayor Berger and Mr. Baucco about the discriminatory treatment based on Plaintiff 's disability and requests for a reasonable accommodation.

61.  Only two weeks after Plaintiff complained of disability discrimination, Defendant(s) initiated disciplinary proceedings against Plaintiff, resulting in a five (5) day unpaid

suspension.

62. That Plaintiff's prior medical history and administrative leave was cited against her in the written decision to suspend her.

63. That on information and belief, the prosecution and suspension were pretextual and baseless. Defendant(s) disciplined Plaintiff because she complained of disability discrimination and sought to assert her right to a reasonable accommodation.

64. Plaintiff suffered damages as a result of Defendant('s/s') unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

65. Defendants intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT THREE

## DUE PROCESS VIOLATION

## 42 USC 1983

66. Plaintiff restates the allegations contained in paragraphs 1-65 of the complaint as fully rewritten.

67. That at all times pertinent to the events contained in this complaint, Plaintiff was an "at will" and "unclassified" employee.

68. That Plaintiff had a property right in uninterrupted employment with the City of Bedford Heights

69. That on information and belief, the City of Bedford heights does not have any written disciplinary system.

11

70. That on information and belief, the City of Bedford Heights does not have any standard for progressive discipline.

71. That on information and belief, the City of Bedford Heights does not have any standard procedure for disciplinary hearings.

72. That at the hearing Plaintiff was not given an opportunity to confront her accusers, nor was she provided any written transcript, affidavit and / or written summary of what their version of events was.

73. That the hearing officer was an employee of the City of Bedford Heights, who on information and belief, took direction and was under the supervision of Mayor Berger on a day to day basis, and as Mayor Berger was her accuser, could not be deemed a fair and impartial hearing officer.

74. That after the hearing, without the opportunity to confront her accusers or have any knowledge of what their version of events was, and despite brining her disability to the attention of the hearing officer, Plaintiff was suspended one week without pay and had a negative disciplinary consequence added to her personnel file.

75. That there is no provision for appeal or independent review of the decision made by the hearing officer for unclassified employees.

76. That as a result of the conditions identified in paragraphs 66-75, Plaintiff was deprived of her due process rights in violation of 42 USC 1983.

77. As a direct and proximate cause of the actions of Defendants in depriving her of her due process rights, plaintiff was damaged in an amount to be proven at trial, said amount being in excess of $75,000.00.

78.  That in addition to any compensatory damages Plaintiff may be entitled to, Plaintiff is entitled to an award of the costs of the litigation, including but not limited to an award of her reasonable attorney fees under 42 USC 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for her past loss of wages and benefits, plus interest;

C. Award Plaintiff compensatory and punitive damages;

D. Order Defendant(s) to purge her records of the suspension and remove any other negative statements related to the incidents or actions identified int his complaint Plaintiff  form her personnel file.

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action, including but not limited to those authorized under 42 USC 1988; and

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND
Plaintiff demands a trial by jury on all claims properly triable by a jury.

 Respectfully submitted,
s/Jay F. Crook
Jay F. Crook (# 0078499)
Jay F. Crook, Attorney at Law, LLC
30601 Euclid Avenue
Wickliffe, Ohio 44092
PH: 440-944-7020
FAX: 440-943-3096
jay.crook@euclidavelaw.com
*COUNSEL FOR PLAINTIFF*